[Cite as *Brienzo v. Wal-Mart Super Ctr.*, 2013-Ohio-2221.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JAMES M. BRIENZO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| WAL-MART SUPER CENTER, ET AL. | : | Case No. 2012CA00141 |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
Common Pleas, Case No.
2011CV02865

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      May 28, 2013

APPEARANCES:

For Plaintiff-Appellant:
SEAN BUCHANAN
P.O. Box 1443
Kent, OH 44240

For Defendant-Appellee Browning
Ferris Industries of Ohio, Inc.:
JONATHAN M. MENUEZ
ADAM W. MARTIN
KEVIN W. KITA
3600 Erieview Tower
1301 East 9th St.
Cleveland, OH 44114

*Delaney, J.*

{¶1}   Plaintiff-appellant James M. Brienzo appeals from the June 29, 2012 judgment entry of the Stark County Court of Common Pleas granting the motion for summary judgment of defendant-appellee Browning Ferris Industries of Ohio ("BFI").

**FACTS AND PROCEDURAL HISTORY**

{¶2}   The following facts are adduced from appellee's motion for summary judgment, appellant's response, appellee's reply, and the parties' Civ.R.56 evidence.

{¶3}   On September 22, 2010, appellant admittedly did some cocaine, possibly smoked a joint, borrowed a car from someone he didn't know, and drove to the Wal-Mart store in Alliance, Ohio in the early morning hours for the specific purpose of stealing.  Appellant's shoplifting item of choice was "usually computers, stuff like that." He loaded up a shopping cart with items, disabled a fire alarm, and pushed the cart out a fire exit.  Appellant then walked out the front door, retrieved the cart, and took it to his car to start loading it up.

{¶4}   Before he could begin, however, he noticed a police cruiser coming toward him slowly with its lights off.  Appellant took off running behind the Wal-Mart store, saw only an open field, and so turned back toward the shopping plaza.  Spotting a trash dumpster, he climbed inside and covered himself with loose cardboard.  Due to his position under the cardboard and below the dumpster's rim, appellant could not see out of the dumpster.

{¶5}   In the meantime, Charles D. Welshhans was going about his daily routine as a front end loader driver employed by appellee.  Welshhans has been driving the same route for 25 years, which includes a number of commercial pickup

sites in Alliance. Generally Welshhans approaches the dumpster (or "can,"), picks it up with his forklift, lifts it up over the truck's windshield to dump into the back of his vehicle, compacts the trash load, replaces the can, and gets back onto the road to head to his next stop. Welshanns testified that the lifting and compacting process is very loud, loud enough to make conversation in the cab impossible.

{¶6} The final portion of commercial sites on Welshhans' Alliance route included McDonald's, Dollar Tree, a Chinese restaurant, Ponderosa Steakhouse, Mom's Drive-Thru, and PTC Conduit Mill. After the final stop on the route, Welshhans would generally proceed to a disposal site at Alliance Recycling.

{¶7} On September 22, 2010, Welshhans made his pickup from McDonald's as usual. At the Dollar Tree, though, he noticed something unusual: police officers in a line, walking through a field with flashlights as though they were looking for someone or something.

{¶8} Welshhans proceeded on to the dumpster at the Chinese restaurant, which was about 30 yards away from where he saw the police officers. He put the forks into the can and watched the police in his rearview mirror, now directly behind him. He called his wife on his personal cell phone and asked her to turn on the television to see if anything unusual was happening to explain the number of police in the area. Welshhans described this as a short conversation.

{¶9} Welshhans then went about his business of lifting and dumping the contents of the can which, unbeknownst to him, included appellant. He noticed it was overloaded with cardboard, which was not unusual. Due to the amount of cardboard, however, he manually compacted the load at least twice. It packed easily because it

was wet from recent rain. Welshhans replaced the can, backed out, and drove away on his way to Ponderosa Steakhouse. He did not see or hear anything unusual.

{¶10} Welshhans proceeded on his route, stopping at Ponderosa Steakhouse, Mom's Drive-Thru, and PTC Conduit Mill, picking up and compacting trash at each stop. Welshhans did not see or hear anything unusual until he left PTC and encountered a roadblock of police cruisers. He realized police were flagging him down and he pulled over. An officer asked if he had serviced the plaza by the mall; when Welshhans said he had, the officer responded that someone might be in the back of his truck.

{¶11} Appellant had realized immediately what was happening when the dumpster he was concealed in was lifted and dumped into the back of Welshhans' truck. Appellant testified that he tried to stand up and yell, but he slipped on the cardboard and his foot got stuck. Appellant ended up being compacted repeatedly along with the refuse. When he realized he had survived the compacting process, appellant used his cell phone to call his mother and his friend, who were unresponsive. Eventually appellant called 911 to ask for help, alerting authorities he was in the back of a garbage truck.

{¶12} Welshhans and officers climbed up onto the truck to look for an occupant, but could not see appellant. Welshhans turned the truck off and they were able to faintly hear someone calling for help. The load of trash had to be dumped for appellant to be recovered.

{¶13} Appellant sustained a broken pelvis, a torn urethra, and a broken ankle. He was in the hospital for a month and a nursing home for three months. His injuries

have required surgery and physical therapy and are a source of ongoing medical problems.

{¶14} Appellant's negligence claim against appellee asserted that appellee negligently "failed to provide for safety concerns regarding the dangers arising out of [its] * * * garbage and waste disposal agreements and equipments;" appellee "did negligently allow easy and general access to their garbage disposal and collection equipment;" and appellant was directly and proximately injured thereby.

{¶15} On January 5, 2012, appellee filed a motion for summary judgment asserting, e.g., it owed appellant no duty of care, and even if such duty existed, appellant's own contributory fault is so great that recovery is precluded. Appellant responded and appellee replied. The trial court initially overruled appellee's motion for summary judgment on March 21, 2012. Discovery proceeded, and appellee filed a motion to reconsider its motion for summary judgment on May 16, 2012. Appellant responded and appellee replied.

{¶16} On June 29, 2012, the trial court granted appellee's motion for summary judgment, finding appellant failed to set forth specific facts showing appellee breached any duty to him.

{¶17} It is from this decision that appellant now appeals.

**ASSIGNMENT OF ERROR**

{¶18} Appellant raises one Assignment of Error:

{¶19} "I. THE TRIAL COURT ERRED BY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT."

**ANALYSIS**

**I.**

{¶20} Appellant argues the trial court erred in granting appellee's motion for summary judgment. We disagree.

{¶21} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56, which was reaffirmed by the Ohio Supreme Court in *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994), citing *Temple v. Wean United, Inc.* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶22} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgment motions on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 56 N.E.2d 212 (1987).

{¶23} Appellant's sole claim against appellee sounds in negligence. "A common-law negligence claim requires a showing of (1) a duty owed; (2) a breach of that duty; and (3) an injury proximately caused by the breach." *Au v. Waldman*, 5th Dist. No.2010 CA 112, 2011–Ohio–2233, ¶ 45 citing *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002–Ohio–4210, 773 N.E.2d 1018, ¶ 22. "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." *Adelman v. Timman*, 117 Ohio App.3d 544, 549, 690 N.E.2d 1332 (8th Dist.1997). Determination of whether a duty exists is a question of law for the court to decide, and therefore, is a suitable basis for summary judgment. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989); *Galinari v. Koop*, 12th Dist. No. CA2006–10–086, 2007–Ohio–4540, ¶ 10, 13.

{¶24} In this case, the trial court found no breach of any duty owed to appellant because appellant failed to establish a genuine issue of fact as to whether he could have been seen or heard by Welshhans while he was in the dumpster. We have reviewed the entire record, and we agree appellant has failed to establish a material fact as to the existence of a duty owed to persons such as appellant who stow themselves in dumpsters to elude the police. Moreover, appellant has failed to establish the breach of any such duty on the part of appellee, whose driver Welshhans never anticipated someone would conceal themselves in the dumpster, could not have seen appellant inside the dumpster, could not have heard appellant cry out from inside the truck, and who took steps to free appellant once the police alerted him to the possibility that someone was concealed in his trash load. We note that appellant was

actively concealing himself in the dumpster; by his own admission, he climbed in shortly before Welshhans drove up.

{¶25} Appellant argues the trial court misread the facts, asserting that Welshhans was in the midst of the phone call with his wife as he was lifting the dumpster containing appellant, implying that if Welshhans had not been on the phone, things would have turned out differently for appellant. We note, however, that this point was not vague in the testimony: Welshhans specifically testified that he called his wife prior to lifting the can, and denied that he was on the phone with her while he was lifting the can. T. 38.

{¶26} Appellant's argument falls short of creating a genuine issue of material fact, and he has not established a duty owed to him by appellee or any breach thereof.

## CONCLUSION

{¶27} Appellant's sole assignment of error is overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Farmer, J. concur.